## Joseph Andrews vs. Adam Boyd.

Where an indorser of a note takes security of the maker, before it is due, to indemnify him against his liability as indorser, and after it is due receives back from the maker the property for which the note was given, and thereupon promises to deliver up the note to him, without further compensation, he thereby waives demand or the maker and notice of non-payment by him, although the property so received back is not worth the sum due on the note.

The taking back of the property, in such case, after the note is due, and the promise to deliver up the note, are also evidence from which a jury may infer that the indorser had received due notice of non-payment by the maker.

Assumpsit by the indorsee against the indorser of a promissory note for $1000, dated January 15th 1837, and payable to the defendant, or his order, in' two years from date, with interest. The money counts were added. The note declared on was signed jointly and severally, by Tarr & Marshall, Ezekiel Bradstreet, Samuel S. Gamage, and Stephen N. Tarr, and was indorsed by the defendant in blank. Trial before the chief justice, who made the following report of the case :

No evidence was offered to prove a presentment of the note to the promisors and demand of payment, or notice to the defendant, as indorser ; but the plaintiff relied upon an excuse or waiver of presentment and notice.

It was proved that the note was given by the promisors to the defendant in part payment for a schooner called the Delta ; that they agreed to give him $2800 for the schooner, and paid him $800 in cash, and gave him two notes of $1000 each, one payable in one year, the other (the note now in suit) in two years from date : That the defendant thereupon gave them a bill of sale of the schooner, in January or February 1837, and that they retained and employed her three seasons : That the defendant, in March 1838, applied to the promisors for security for the payment of the two notes, and that they, for that purpose, executed to him a bill of sale of eleven sixteenths of the same schooner : That this bill of sale was executed by all of them, and dated March 9th 1838 : That the defendant, on the same day, gave them a receipt or counter obligation, ac-

knowledging that he had received of them a bill of sale of eleven
sixteenths of schooner Delta, the same being security for two
notes of hand signed by them, dated January 15th 1837,
amounting to $2000, and agreeing to give them a bill of sale
of the said eleven sixteenths of said schooner, when the said
notes should be paid. After the second note (that now in suit)
became due and remained unpaid, viz. sometime in the winter
of 1839, 1840, two of the promisors applied to the defendant to
take back the schooner and give up the two notes ; but no ar-
rangement was made at that time.

In consequence of the failure of Tarr & Marshall, in the
autumn of 1839, their interest in the schooner went into the
hands of assignees, and was by them sold at auction, at Rockport,
on the 13th of March 1840. The defendant, who lived in the
town of Essex, attended the sale, and proposed to Bradstreet,
one of the promisors on the notes, to bid off the schooner ;
but he declined, and proposed to the defendant to bid her off,
and then take back a bill of sale of their shares and give them
up their notes. He did bid her off, and took a bill of sale of
three eighths of five sixteenths, which was the interest of Tarr
& Marshall, at $100. He then gave Bradstreet to under-
stand that he would take the whole of the schooner and give
them up the two notes ; but no arrangement was made at that
time. It was then known to the promisors on the notes that
the second note, being the note now in suit, had been indorsed
to the plaintiff. Shortly after, the defendant sent a crew for the
schooner, but the promisors informed him that they were unwil-
ling to let him take possession until they had come to some ar-
rangement. It was then agreed that he would take back and
complete an unincumbered title to the schooner, and give up the
two notes. About $105 had been paid on the first note, and
$120 had been paid to the plaintiff as two years interest on the
second note.

Pursuant to said agreement, Bradstreet went the next day to
the defendant's house to complete the business. The interest
of Tarr & Marshall had already been transferred to the defend-
ant. The other three promisors on the notes, and owners of

the schooner, executed and delivered to the defendant a bill of sale of their remaining five eighths of five sixteenths of the schooner, and surrendered to him the instrument of defeasance given by him on the 9th of March 1838 ; by which he acquired a complete and indefeasible title to the whole schooner : In consideration whereof he delivered up to them the first note of $ 1000, and engaged to deliver up the other note, which he said was at that time in the hands of Mr. Perkins [the plaintiff's counsel] at Salem, who had written him a letter about it. He then made and delivered to said Bradstreet a paper of even date with the bill of sale (23d April 1840) promising to de liver, without any compensation, except what is therein stated, to Bradstreet, Gamage, and Stephen N. Tarr, the note now in suit [particularly describing it] or the amount of the same ; said Bradstreet, Gamage and Tarr agreeing to settle all bills con-'racted on account of the schooner Delta before April 10th 1840. The defendant desired the said Bradstreet to put a small consideration into the bill of sale, fixing it at about the rate at which he purchased Tarr & Marshall's interest at auc-tion, that he might make as good a bargain as he could, or settle upon as easy terms as possible, with the plaintiff. After this arrangement, the defendant took possession of the schooner and retained it.

The defendant contended, that if the taking of security oper-ated as a waiver of demand and notice at all, which he denied, that it could only extend to the value of that security ; and he proposed to offer evidence to show that in consequence of the fall, generally, in the price of vessels, and the wear and tear of this vessel, she was not, at the time he took her back, of the value of the amount due on the two notes ; but the judge was of opinion that such a fact, if proved, would make no differ-ence, and that the evidence was immaterial. The judge was also of opinion that the taking of collateral security by the in-dorser, before the note became due, and the agreement, after-wards made by him with the promisors, to deliver up the note or its amount to them, without further compensation — the note being then outstanding in the hands of an indorsee — was either

an implied admission that he had received due notice, or a waiver of demand and notice, and rendered him liable, as indorser, to the plaintiff, without other proof of the demand, dishonor and notice.    There being no controversy about the facts, a verdict was taken by consent for the plaintiff, subject to the opinion of the court upon a case to be reported.

Verdict to be set aside and the plaintiff to become nonsuit, if the court are of opinion that the plaintiff is not entitled to recover ; otherwise, judgment to be rendered on the verdict.    If the court are of opinion that the rights of the defendant depend upon the actual value of the schooner at the time of taking security, or at the time of the final arrangement by which he took it back, a new trial is to be had to ascertain that fact.

*N. J. Lord,* for the defendant.    The taking of collateral security by an indorser is not *per se* a waiver of demand and notice *Bond* v. *Farnham,* 5 Mass. 173.    The facts in that case are so different from those in the case at bar, that the decision there is not applicable here.    There the indorser knew that a demand on the maker would be fruitless, as the maker had assigned all his property to secure the indorser.    Demand and notice are not dispensed with by the indorser's merely taking security.    To produce this effect, the indorser must receive funds sufficient to pay the note, or *all* the property of the maker must be transferred to him.    *Spencer* v. *Harvey,* 17 Wend. 489.    See also *Tower* v. *Durell,* 9 Mass. 334.

A promise by an indorser to pay an overdue note is not binding, unless it appears affirmatively, that at the time of the promise it was fully known to him that there had not been demand and notice.    *Trimble* v. *Thorne,* 16 Johns. 154, per Spencer, C. J.    Bayley on Bills, (2d Amer. ed.) 294 – 297.    The agreement between the defendant and the makers of the notes was on mutual conditions, and may be enforced by them in a separate action, on allegation and proof of performance of the conditions on their part.    By the true construction of that agreement, the defendant did not expressly promise to pay this note, unless the makers should pay the bills contracted on account of the schooner.

The defendant had a right to have an appropriation of the security towards payment of the first note, which was already due ; the security being insufficient to pay both notes. *Allen* v. *Kimball*, 23 Pick. 473.

*Ward & Perkins,* for the plaintiff. As the defendant took all the property for which the notes were given, as security for his indorsement of the notes, he was not entitled to notice. He thereby waived it. *Mead* v. *Small*, 2 Greenl. 207. *Prentiss* v. *Danielson*, 5 Connect. 180. *Corney* v. *Mendez Da Costa,* 1 Esp. R. 302. *Bond* v. *Farnham,* 5 Mass. 170. 3 Kent Com. (3d ed.) 113. Chitty on Bills, (8th Amer. ed.) 472, 473. 1 U. S. Digest, Bill of Exchange, 221, 222.

The defendant not only took security, but he promised to pay the note ; and this promise enured to the holder. Chitty on Bills, (8th Amer. ed.) 533, 534. *Arnold* v. *Lyman,* 17 Mass. 400. *Allen* v. *Williams,* 12 Pick. 297.

The case of *Lundie* v. *Robertson,* 7 East, 231, is an answer to the dictum in 16 Johns. 154, that it must appear affirmatively that an indorser, had full knowledge, when he made the promise, of the want of notice and demand. In 3 Kent Com. *ubi sup.* it is said, " the weight of authority is, that this knowledge may be inferred, as a fact, from the promise under the attending circumstances, without requiring clear and affirmative proof." See also *Hopkins* v. *Liswell,* 12 Mass. 52. *Martin* v. *Ingersoll,* 8 Pick. 1. *Breed* v. *Hillhouse,* 7 Connect. 523. *Potter* v. *Rayworth,* 13 East, 417. *Cushing* v. *Gore,* 15 Mass. 69.

The defendant's promise to the makers of the note was not on a condition precedent. If it was on any condition, that condition was inserted on the groundless supposition that the holder of bills, contracted for supplies to the schooner, had a lien on her therefor. Such condition therefore was nugatory.

As here was not only security to the indorser, but a special agreement, on certain terms, that he would pay the notes, the amount of the security was unimportant.

The defendant holds property for the plaintiff, and has in effect agreed to apply it to the plaintiff's use. He is therefore liable on the count for money had and received. *Baker* v. *Birch,* 3 Campb. 107.

SHAW, C. J.   The court are of opinion, that the direction proposed to be given to the jury, at the trial, was right.   Whatever may have been the effect of taking collateral security of the promisors, by the indorser, to indemnify him against his liability as indorser, yet when he took back the property which was the original consideration for the notes, and agreed in express terms, with the promisors, that he would pay and take up the note now in suit, and deliver it to them without further consideration — and this after the note became due, and after he must have known whether he had received due notice of its non-payment, or not ; we cannot perceive why this is not evidence, from which a jury might properly infer that he had received due notice of the non-payment of the note from the holder.   But if this were not clear, we are of opinion that when the indorser took the property of the promisors into his own hands — being either of sufficient amount and value to pay the note, or perhaps being all they could give him — and when, with such funds as they did furnish him with, he agreed absolutely to pay and take up the note on which he stood as indorser, without further consideration from them — it was a waiver of notice on his part.

*Judgment on the verdict*